May it please the court, my name is Carrie McConaughey-Harris, here with David Michael Cantor, pro bono representing Ms. Valinda Jo Elliott, the plaintiff appellant in these proceedings, your honors. I know you're fully aware of the issue presented and the background facts and law of the case, so I would like to jump right in to the most important sub-issues that I think there are, respond to some of the issues raised in the amicus and in the response brief. And if you, of course, have any questions on any aspects of the case, I'm happy to answer any of those. I will also attempt to save a few minutes for rebuttal. First, I'd like to make clear that this case is not about an attack on Indian sovereignty, as appellee and amicus are asserting. The tribe instead is attempting to expand its authority beyond its inherent sovereignty. It's attempting to reach out and extend its jurisdiction to pull Valinda Jo Elliott into their tribal court. Second, the critical distinction appellee and amicus are missing in the briefs is that the tribe does not presumptively have jurisdiction unless and until Valinda proves otherwise. The law is clearly to the contrary and dictates that the tribe presumptively lacks jurisdiction unless and until one of the limited exceptions pursuant to Montana applies. And the question regarding the status of the land is not enough to establish jurisdiction. Third, the power to regulate and to exclude do not include the power to reach out and hail a non-consenting non-Indian into tribal court. Fourth, your ---- The Supreme Court has not gone that far yet to say that tribal jurisdictions does not extend, tribal civil jurisdictions does not extend to non-members. Well, Your Honor, actually the court in starting with Montana and even before that, as a matter of fact, in the case of Wheeler indicated, and in other ones as well, indicated that the presumption is that the tribes do not have the authority unless it is given to the tribes, unless it is something that they retain in their inherent sovereignty. And the inherent sovereignty has not ever included the ability to hail the non-consenting non-Indians into court. Does it include the opportunity to enact land use regulation on tribal land? Does the tribe have the authority to enact land use regulations governing tribal land? They have the authority pursuant to federal statute to regulate their use of their land, yes. Well, what about regulating other people's use of their land? Don't they have that authority as well? They have the authority to regulate in the sense of requiring ---- For example, can't they say, you know, if you're going to fish, you need a license. Right. If you're going to cut trees, you can only cut this kind and not that kind. Right. Regardless of who's doing the cutting or the fishing. They have that authority, correct? Yes. Yes. They have the authority to do that. How are they supposed to enforce that authority if a nonmember comes onto their land and violates those regulations? What, in your view, are they supposed to do about that? Their authority at that point is to exclude. Sorry if I'm being too loud with that. The authority is to exclude them at that point. If they are not ---- Well, cut down 50 trees they weren't supposed to cut down. They just say, gee, don't come back. That's it? That's all they can do? Because the person is not consenting to the tribal jurisdiction over them by agreeing to be regulated, by agreeing to a contract-type liability, by agreeing to come in and subject themselves to the tribal authority, that means that the tribe's remedy is in federal court. It's not that they can't do anything about it. It's not that there's no way they can punish, as they've asserted, the wrongdoers on their land. It's that the forum for that has to be federal court. How does federal court have jurisdiction to enforce a tribal regulation? I'm sorry. I'm sorry, Your Honor. How does federal ---- how do you have jurisdiction, how does a tribe have jurisdiction in federal court to enforce a tribal regulation? The tribe ---- There is no jurisdiction for a tribe to enforce its own regulation in federal court. Right. The tribe would have a cause of action instead against the wrongdoer, Your Honor. I'm not saying their regulation should be enforced in federal court. I would agree with that. They don't. What you're saying is that under your theory, the tribe can't enforce any of its own regulations against nonmembers anywhere. Nonconsenting nonmembers who have not agreed to any kind of regulation by the tribe. Does not write out the entire other parts of the Montana case. I'm sorry. I'm sorry, Your Honor. Doesn't your argument write out the entire other parts of the Montana case that did not involve consent? Talking about tribal welfare, economic well-being and so forth. That's a clear exception under Montana. Absolutely. No, Your Honor, because what Montana began or continued or clarified, however you view the law before that, was that those are very limited exceptions. And in the cases that have followed, in particular Strait and then Nevada, and then even most recently as submitted as the supplemental authority with the Plains case, they have clarified that it is the limited exception. When it's inherent sovereign and when it's just a harm, in particular in the Plains case. Interestingly, in the Plains case, tribal court remedies had been exhausted, correct? And so the court had no occasion to decide whether that had been required, but it certainly had been done, which is exactly what you're not willing to do in this case. Well, and I'll answer in two parts to that. First, I want to point out, because in Plains it is very important, because they do say, by the way, a harm to the land is never enough. The fact that it's occurring on the land, that isn't enough. What it has to be is something much greater that actually truly affects, and I can find the quote real quick for you, that it has to be that exception includes... It has to be that there's some direct effect on the political integrity, the economic security or the health or welfare of the tribe. Right. That's the second Montana exception, but that certainly does not require a consensual relationship for this tribe to exercise its civil authority. But it does require a consensual relationship. Where is that in Montana? In Montana, it hints at it. It's furthered in Strait. It's furthered in Nevada and in Plains. I didn't say that at all. Strait talks about a road in which that was a fee-owned road going through tribal land. The basis of Strait was that the tribe didn't own the highway, that it was a public highway on which the accident occurred. And therefore, there was no basis to assert tribal jurisdiction, right? It didn't have anything to do with an accident that would have occurred on tribal land. That's a different question. So why do you say that Strait involved consent? There's nothing in Strait about consent on tribal land. Strait specifically says that absent express authorization by federal statute, treaty or tribal jurisdiction over non-member's conduct exists only in those limited circumstances suggested in Montana. And to meet that second exception in Montana, the cases are much more extreme. And they never turn on just the status of the land. Here they also don't turn on consent. At least I don't see that. Because if you're right, no matter how close to the bone the regulation is, a non-member can come onto the tribal land and say, I do not consent to any regulations or to your jurisdiction, but I am now going to cut down all the trees in the state of Montana. I'm going to cut down all the trees and leave zero trees for you. Ha-ha. You know, King's X. You can't call me into tribal court to account for my violation of tribal regulations, even though it affects the health and welfare and the economic viability of the tribe. I don't see anything in Montana or in any of the other Supreme Court cases, including Plains, that would require consent to be overlaid onto the Second Montana Convention. I invite you to point out, you know, what case does that or where it says that. Oh, sure. Well, and I would point out that all of those cases are dealing with contract situations. Almost all of the cases involve where the entity or the person is contracting somehow with the tribe. So the question of jurisdiction is much stronger there. Again, here we have nothing that indicates that she had any kind of consensual agreement to subject herself to tribal authority. And that's what's missing in all the cases discuss it in that context. And they also discuss it in the context of no matter how important the land inquiry is, the most important inquiry ahead of that is the status of the defendant in the civil action. And in this case, it's the non-consenting non-Indian. Right. But the question, threshold question in this case is not whether or not the tribe has jurisdiction, period. The question is whether the tribe plainly lacks jurisdiction. And, Tedeschi, in the Ford case, which is a lot more tenuous than your circumstance, we said you still have to exhaust. And then your remedy under Wilson v. Washington is you go to federal court and you say, this judgment is not entitled to be enforced in federal court. That's what we said in Wilson, that you exhaust unless it's plainly lacking. And then the issue is whether or not then you deal with the primary jurisdictional issue you want to raise today. So we give the tribe the first opportunity to decide its own jurisdiction unless jurisdiction is plainly lacking. We have to exhaust there, and then if you have a judgment against you, then you go to federal court under Wilson v. Washington and say this shouldn't be enforced because there's no jurisdiction. Not that there's plainly lack, not that there's, it's plainly lacking, there's no remedy. Well, and, Your Honor, Your Honor, I would, I mean, I'm sorry if I'm pronouncing that wrong. There wasn't jurisdiction in the tribal court there. And I would point out, again, the exhaustion doctrine as far as the Supreme Court has ruled. In National Farmers Union, they discussed it. In Iowa Mutual, which is what the tribe is heavily relying on here, exhaustion was never attempted whatsoever. And they didn't raise the argument in the district court either. They didn't say there were any exceptions to the exhaustion doctrine. That's the reason it was sent back here. Exhaustion has occurred to the extent it is necessary, which, as you know in our briefs, we don't believe it's necessary. It's a matter of comity, it's a matter of allowing them the first opportunity. And here that has occurred. It was in the tribal court. The tribal court issued their specific in-depth ruling on it, finding that they had jurisdiction pursuant to Montana, finding and discussing Nevada v. Hicks, and then going on to say that they didn't, weren't going to follow Hicks because this conduct violated their standard for personal conduct, Ndidi B. K. U., and I'm pronouncing that wrong as well, regardless of the person's status. Again, they do not have the authority to make that kind of a ruling over a non-consenting, non-Indian. The cases are clear. Montana has not gotten to that yet. Even Iowa Mutual Company, you have a person writing an accident that happens in tribal land, they say you have to exhaust. The specific quotes, Your Honor, in the cases, even in this Court's cases as well, such as Smith in general, inherent sovereignty does not include, does not extend to non-members of the tribe. Well, if that were the rule, why would we need the Montana exceptions anyway? That is the rule that Montana established. No, no, I mean, what you're saying is there's no jurisdiction over non-consenting non-members. Right. But Montana didn't say that alone. It talked about tribal economic security, well-being, and so forth. So if you, if we adopted your rule, we'd write out that whole other exception. But it doesn't, because it's only those exceptions that touch on tribal self-government. What would it take, in your view, to touch on tribal self-government, economic well-being, health and welfare, all those things? What would it take? Those few types of limited cases that have been discussed here and in the Supreme Court regarding taxation. Give me an example. In this case, what has happened? Adoption. The case, I believe, the Plains, not Plains, and the other case that involves the non-Indian who wanted to have the children, who married into the tribe and wanted to have the children become part of the tribe and the rules of the tribe forbade that. Those types of things where it's the actual self-government, their decisions. How about regulating its natural resources? Again, it can regulate in the sense of regulating internally what has to be done. And if anyone is coming in from outside into the tribe and wants to contract with them, wants to put themselves under the tribe's jurisdiction, they can regulate those. Here, where you have someone... Does someone implicitly do so by coming onto tribal land and using it? No, no, because if they wanted to subject themselves to tribal jurisdiction, they would have entered that contractual relationship. They would have agreed to that regulation, and they did not. When it's non-consensual... To go back to Judge Graver's hypothetical, so a logging company comes in the dead of night and takes out thousands of trees, goes out a reservation. There's no remedy for the tribe, right? That's what you're saying. There is a remedy for the tribe, and it's in federal court to sue the non-consenting non-Indian to bring them to court in federal district court for a cause of action. For tortious conduct? I don't know all the federal statutes. There is a remedy for them, though. You're arguing that they have to find a state law remedy or federal remedy to go into federal court. We're saying, what happens to the tribal regulation? And your answer to that is, no, you can't enforce it except to keep them off, and if they get on, you can't enforce it anywhere. You cannot enforce tribal regulations against non-consenting non-Indians, Your Honor. And what case says that exactly the way you put it? The cases have not addressed that specific question. They have given the language in every one of them following Montana that suggests it, though. And it says the only powers they retain are those inherent sovereign powers. And the power to reach out and hail non-consenting non-Indians has never been one of their inherent powers, Your Honor. You have a little bit of time. We'll give you some time. Thank you, Your Honors. Mr. Elliott. May it please the Court, my name is Robert Broccoli. I represent the White Mountain Apache Tribe. Counsel for Ms. Elliott, counsel for Amicus Curiae. In the Plains Commoners case, the U.S. Supreme Court recently said that regulatory authority goes hand-in-hand with the power to exclude. And Elliott already concedes that the tribe has the power to exclude her. If you look at U.S. v. Montana, everyone is fixated on the holding in that case that is so obvious that naturally, if you have non-Indian feasible land inside a reservation, the Crow tribe lacks the authority to exclude the person from that land. And the Supreme Court said, because you don't have the power to exclude, you don't have the power to regulate the activities of non-Indians on that feasible land. Therefore, tribal government is not impacted. In that case, as the Court mentioned in Strait v. A1 Contractors, they point out specifically, the tribe never had any pleadings that said that the activities of the non-Indians on feasible land would imperil or menace the tribal government, self-government, self-governance, or natural resources. So all the cases that have been cited by Elliott, all the motor vehicle accident cases have to do with rights of way, not on trust land. And in Iowa Mutual, Iowa Mutual says that where a tribe has the power to regulate, presumptively it has tribal court jurisdiction over non-Indians for activities that are subject to those regulations. In Mescalero v. New Mexico, there is a wonderful opinion. I recommend anyone to read that opinion. It specifically says that tribes retain inherent sovereign authority over their land, their members. They can condition entry by non-members based on their power to exclude. In this circuit, in Babbitt-Ford v. Navajo Indian tribe, you upheld a right to exclude. You upheld a Navajo repossession ordinance. Babbitt-Ford was a defendant. Babbitt-Ford goes on to the reservation, repossesses a vehicle in violation of Navajo civil law. And they were subjected to Navajo statutory penalties. And this circuit upheld that. In 1985, I appeared in this very courtroom. The White Mountain Apache tribe excluded a man by the name of Baker Hardin, Jr. He was not a lessee. He was living in his parents' cabin on their reservation, which is on their lease. He violated a federal law. The tribe has an exclusionary ordinance. We filed an action in accordance with due process, gave him notice, and had a hearing in the tribal court as to whether or not there were sufficient grounds to exclude him from the reservation based upon his violation of tribal law, not federal law. Tribes do not need a delegation of federal statute or to exercise authority over non-members who come onto the reservation. Listening to Elliot's argument, they're saying that a trespasser has greater rights than a person who comes on their reservation, a non-Indian who buys a fishing permit and a hunting permit and agrees to abide by the laws. But she says in her brief, I refuse to agree with the licensing and permitting authority of the White Mountain Apache tribe. As a trespasser, yes, I can do some damage to the forest, wipe out 200,000 acres that will not recover for 150 years. But you can't touch me because I am non-Indian and I'm a non-member. There's absolutely not one Supreme Court case, there's not one federal court of appeals case in existence that ever says a tribe cannot exclude a non-member or that a tribe cannot regulate the conduct of non-Indians on trust land. This probably doesn't bear on our legal analysis, but I'm curious about the answer. To be sure, Elliot has some sympathetic facts in her favor. She was, at least under her version of events, in extremis when some of these things occurred. In the tribal court, does she have the opportunity to make arguments about any justification or necessity for the actions that she took? She will have ample opportunity to explain any defense that she took. She has that as a matter of law. When they mentioned the two Apache words, I noticed that they filed their motion, their tribal court of appeals, and I think that's been an essay to preserve the evidence. And we use terms like res ipsa loquitur and all these other kinds of terms. And we speak a language that hasn't been spoken in the vernacular for 1,500 years. The two Apache words, and I'm just deviating a little bit here, but the two Apache words, one means reservation, which the tribal court explains and refers you to Article 1. Section 1 of the English written constitution. The second one has to do with personal conduct. But all of this has been codified in the game of fish code. She will have ample opportunity to explain that under the common law, she was not intentionally trespassing. Perhaps she did not intend to do the fire, that she was a survival mode, that there are certain circumstances that when you're protecting your life, you can take certain steps. That's why the U.S. attorney did not criminally prosecute her, because there's a case in Ninth Circuit where a person was lost, and they burned down a substantial part of the natural forest. Ninth Circuit held there's no criminal intent if you're trying to save your life. We're not charging her with criminal contempt or criminal acts here or criminal trespass. We're charging her with violations of the game of fish code. The game of fish code has been upheld by the U.S. Supreme Court in the Mescalero versus Mescalero Apache tribe, or New Mexico versus Mescalero Apache tribe. I had a companion case, and in 1985 the state of Arizona conceded that the White Mountain Apache tribe had exclusive regulatory and adjudicative jurisdiction over members and non-members coming onto the land. Game and fish code goes far beyond just hunting and fishing. It goes into things like starting fires. The issue here is, can the White Mountain Apache tribe regulate a non-Indian who comes onto the reservation with or without consent, and regulate where and how they can start fires? We suggest to this Court that it's black-letter law that the White Mountain Apache tribe and any tribe on trust land has the authority to start fires. They have the retained sovereign authority to regulate, to condition entry, and they do condition entry. They say to non-members, if you come on this reservation, you have to abide by certain rules. It's right in the judicial code, the government code, the exclusionary code. If you concede that a tribe has the right to exclude you, as Elliott has, you're conceding they have the right to regulate you. And what is regulation if you don't have authority to adjudicate? You have no real authority. You've eviscerated tribal government. And that's what Strait v. A1 contractors said. The U.S. Supreme Court and Justice Scalia repeated it again in Hicks. I think you're asking for a bit more, though. It's not just to find, in this case, that there was a violation of regulations. You're asking for a civil money judgment, right, where the tribe is. We are asking for damages, statutory damages, which this circuit upheld in Babbitt-Ford. If you violate the authority of the sovereign, you can pay statutory damages. And that's what we have, statutory damages. We also have a claim for negligence and common law remedies for restitution. And, you know, under the National Indian Forestry Commission. Right, so it's not purely a regulation case. It's a civil suit. I mean, you certainly are arguing under your own regulations, but you're also arguing under common law theories and perhaps some other equitable theories that are not inherent in the regulation of tribal resources, right? Well, we're, we have a claim, yes, you're right. We are asking for some. You're not just asking her to pay a fine because she violated the tribal regulations. Right, we're asking for restitution for the damage to the forest. Right. And I think that's where it departs a bit. You know, we followed these cases for a long time, and you've heard my view. I don't think the Supreme Court has gone so far as to say you don't have civil tort jurisdiction over non-members. But it is true that starting post-National Farmers Union through Iowa Mutual and then the Strait, Montana Strait, that the Supreme Court has cut down quite a bit and limited tribal jurisdiction over, civil jurisdiction over non-members. But the bright line has always been, the courts have always adopted the bright line as not based on whether you're a member of the tribe or not. That was Justice Souter's concurring opinion in Hicks, which I regard as the Tower of Babel opinion, because there are so many different views on this. Justice O'Connor took great issue with that. The bright line is, does it occur on trust land? Does the tribe have the power to exclude? And that was reaffirmed in... It's a bright line anymore. Hicks said that tribal ownership was a factor, but it didn't say it was an exclusive factor. I mean, that was a significant statement in Hicks. Yes, but it's dicta, because the real holding in that case, and Elliott reads Hicks a lot broader than Hicks reads itself. Hicks says, we are limiting, and Ginsburg joined with this, we are limiting the holding of the Hicks case to whether or not a tribal court has jurisdiction over state officials enforcing state law for a violation that occurred off the table. Right, but Hicks does say, I mean, it was different. It was something new in Hicks than what we've seen before. Hicks says that, let me quote it, the existence of tribal ownership is not alone enough to support regulatory jurisdiction over nonmembers. And you may say it's dicta, but the same court sits there, and it's... They haven't gone there yet, but it may well be that the next step in Supreme Court jurisdiction is to say, you don't have civil, civil jurisdiction does not extend to civil money judgments based on tort theories in tribal court. I don't think they've gone there yet, but it's entirely conceivable to me that they may. I hope they don't go that way, because it would, to me, that would be anarchy in terms of any kind of remedy. Federal courts are Article III courts. They have limited jurisdiction. There's no way the White Mountain Apache tribe can file a claim in state court using its game and fish laws or laws to enforce those. The state courts will decline jurisdiction. We're not a 280 state. They would accept jurisdiction on tort theories. The state court? Yes, or the federal court. Well, I don't know what the jurisdiction of the federal court would be. It wouldn't be diversity. It depends on how you add diversity. I think the standard of review, you know, this Court has given us guidance in Stock West v. Taylor, and you have said that the standard of review as to whether or not the district court below committed abuse of discretion by deferring to the tribal exhaustion doctrine, that is the standard of review. And under that standard of review, which is the same as abstention, I would say that, one, Ms. Elliott has not exhausted her tribal court remedies. The fact that the tribe does not provide an interlocutory appeal process is the same issue that was in Iowa Mutual. In the Blackfeet tribe, they don't have an interlocutory appeal. Recently, there was a case in Utah, Marathon Oil v. Johnston. Specifically, the court in that district court case said that there's no interlocutory appeal, but that's of no moment. And it was really interesting when you mentioned, Your Honor, about where the U.S. Supreme Court might be going. If you look at Iowa Mutual, you look at Nashville Farmers, and then you look at this circuit's case in all-state indemnification, where you found that the tribal court had tort jurisdiction because it's a bad faith claim. In all those cases, those were non-Indian defendant corporations. And by implication, the Supreme Court is saying it's okay to hail them into the tribal court, because they never came back again. And if the bright line was membership, why wouldn't they just make it right there? It's plain that the tribal court has no jurisdiction. I haven't gotten there yet, at least in my judgment. But I think starting the last 10 years, I mean, Strait was somewhat of a departure, I think. And then Hicks is, if you follow the Supreme Court trend, I think, you know, and the tax cases as well. You know, it's interesting, Your Honor, when you read this case, I read Plains, and there's a statement that Ms. Elliott made, her attorney's made, that says that there's presumptively no jurisdiction over non-members. You go back and trace a quote back to Strait, and the two sentences above in Strait say, but it's quite the contrary when it's on trust land. You know, you can slice and dice these quotes. But then, of course, you call it dicta, but in Hicks they indicate that it's a factor now. It's not a definitive factor over ownership of land. The only reason I'm engaging is that I find sometimes the issues in sovereignty overwhelm the issues in the case. And I hope that, and this has nothing to do with any of our decisions, but, you know, you need to come to a practical resolution of this issue, perhaps. And you may want to sit down and work out a settlement, because, you know, from their point of view, let's say they win this case, they still face suits and potential suits in state or federal court. If you win, you go through the process. You may get a judgment in tribal court. You've got to enforce it in federal court and so forth. And at the end of the day, you may not have any resources to pay restitution. So given that and the trend, I think I often say in these cases, this isn't the first time I've said it, it's sometimes you have to look at the issues of the case and not necessarily way of sovereignty issues in a way that might end up changing the law to your detriment. That's very good advice, Your Honor, and we have tried to mediate and settle. And that's always an option. It's good advice. I see my time is up, Your Honor. Yes, and Mr. Sparks is here. Do you want to argue, Mr. Sparks? I'm sorry I didn't give you much time, but we'll give you five minutes. I'm proud to speak here before you. All of you have made the sacrifices necessary to become our representatives of the system of justice. They have taken the high road over the years since the 1934 Act to develop courts of law with juries, courts of appeals, civil rules that equate to those that are strange to them in terms of traditional justice. However, they have done so, and all of the courts in Arizona have cooperated with the federal courts and with the state courts in accomplishing a judicial system that does not fail to deal with most of the problems that Arizona faces. Namely here, 27 million acres of the state, a third of it is Indian lands, and thousands of cases come before tribal courts on a civil basis each year. The Arizona Supreme Court and the courts of the federal court and tribal courts gather and have done so for at least 40 years to my personal knowledge and have worked out systems for authenticating and verifying tribal court judgments in the state and federal systems, and likewise agreements of mutual understanding and mutual agreements of enforcement, cross-deputization, and the standards by which the courts require practice before them. Namely, they have bar exams. Most of the courts speak multiple languages, including the multiple languages on the reservation, English and Spanish, plus as many as five different native languages. They have juries, and the Indian reservations now have many non-members living on them, including non-members who are non-Indians. So in Arizona, the tribal courts play an extraordinarily important role in the system of civil justice. This court has indicated on a number of occasions the deference that the federal court has given to tribal courts in the ordinary practice of civil jurisdiction in matters particularly involving the resources, health, welfare, and safety of people within the reservation. In these 27 million acres, the conduct of everyone is vital, it is important, and civility and civil compliance is very important to the tribes. It is not one, this case is not one where the state courts, the federal courts, and the tribal courts are in competition with each other about jurisdiction. And indeed, there's plenty of work to go around. And thousands of courts, thousands of decisions are made each year before juries and before tribal courts that never gain the attention of this court. And in the Hicks case, I wanted to refer to just a note from Justice Ginsburg who said, we're not going so far here as to adopt a per se rule. And I believe that is what Ms. Elliott is proposing, that there is a per se rule for non-Indians on Indian reservations, which is the classic case of anarchy, namely that there's some element of our society who can go upon the lands of another jurisdiction and expect not to be held accountable by that jurisdiction. Here Ms. Elliott suggests the tribal court is reaching out. The tribal court is not reaching out. The tribal court here has simply taken a person who willfully entered the reservation, willfully set a fire, and whether it intended to cause a conflagration or not, the reasonable and proximate result of that conduct was conflagration. Now, the court today, and whether it's advocacy or not, has recognized that the tribes have the right to regulate themselves and their resources and conduct within the reservation. The Intertribal Council of Arizona and the tribes of Arizona urge that that must include the regulation of civil conduct. Here, unlike the situation in Hicks, we're not involved here with state law enforcement officers who have come upon the reservation to enforce a judgment. And I see my time is up. We are not dealing here with state law enforcement officers coming upon the reservation to enforce a state law. Arizona is not a public law 280 state. Arizona has not assumed civil and criminal jurisdiction over the reservation. And as you might understand, the judicial resources and the law enforcement resources of Arizona, among all the judiciary and law enforcement systems, are strained. The tribal courts take their laboring orders seriously. Non-Indians, including Miss Elliott, are guaranteed the rights under the Constitution equivalent to them as a result of the adoption of the 1968 Civil Rights Act by Congress. All of those and the tribal constitutions assure that due process will be afforded Miss Elliott and others within the reservation. Their courts of appeals, Your Honor, are courts of scholarship. Our courts of appeals for the Indian tribes, and I use that generously because I'm not an Indian, but some of the great scholars and historians in the country serve in on the courts of appeal, including former chief justices of the Arizona Supreme Court, federal courts, courts of appeals, and law professors from around the country. This is not a mystical system. The standards that are observed in White Mountain Apache, as in the other reservations, are not unexpected consequences of civil conduct anywhere in the world. And on behalf of Inter-Tribal Council, we would ask this court to uphold the findings of the lower court, where the court deferred to tribal jurisdiction in dismissing without prejudice Miss Elliott's complaint. Thank you, counsel. Your Honors, may I have a few moments to respond? Yes, I'll give you five minutes. Thank you, Your Honor. I would like to start off and highlight that this is the conduct we're talking about, where Miss Elliott was wandering lost for three days on the tribal property without food and water. She thought she was going to die. That's the merits, though. Whoever gets the case, whether it be the tribal courts, the federal courts, the state courts, they're going to deal with the merits. And this is no different, Your Honor, than if someone from the tribe came onto state property or other federal property and set a fire thereon. It's not that there is no remedy for the state if that were to happen. The remedy is in the federal court. This is no different than that exact argument, Your Honor. We're talking about what is the equivalent of a sister state, not quite, but it's a dependent, inherent sovereign nation. They have their system, the states have theirs. And when someone wanders onto either of those properties and causes that tortious conduct, the remedy isn't in either one of those particular forums. It's in the federal court. Why isn't the remedy on state lands a possible remedy in state courts? State courts would have jurisdiction. In the cases like, I can't think of the case off the top of my head, Your Honor, where they said, was it Williams v. Lee, I think, where they asserted that that was, in federal court, was the proper forum for those type of grievances for a similar situation. And I would like to point out, too, that the Supreme Court's most recent foray into this area, which is the Plains case, and the Tribe may quite legitimately seek to protect its members from noxious uses that threaten tribal welfare or security, or from nonmember conduct on the land that does the same. And so they seem to be saying something contrary to what you are, that is, a nonmember's conduct on the land that harms the tribe. And I would go on, Your Honor, and I'm not sure where that quote was from, but on 2714, where they go on and they specify the conduct covered by that exception, the second Montana exception, must do more than injure a tribe. It must imperil the subsistence of the tribe. And there is no way that the mere conduct here could do that. In 2724, the tribe is able to vindicate its sovereign interests in protecting its members and preserving tribal self-government by regulating nonmember activity on the land. So, I mean, it just seems to me that if you read the case as a whole, it just doesn't say to me what it seems to say to you, I guess. Well, and again, the focus in any of the cases, although the facts, of course, are different in this particular issue, hasn't been before, they constantly reiterate that it does not presumptively have jurisdiction. And the harm, they talk about the harm here again, and it's saying that just a harm isn't enough. Here we're talking because the fire spread out of control and caused a vast amount of harm, that that somehow equates to jurisdiction. If the fire had been immediately put out and burned one tree, I mean, would that still count for their jurisdiction there? It can't simply be the harm that is what we look at. And I would also... The question here isn't necessarily purely one of jurisdiction. And the reason I say that is that the test for exhaustion is whether jurisdiction is plainly lacking. Now, you've used the phrase presumptive jurisdiction, but that doesn't necessarily mean there's no jurisdiction. So isn't the proper course in this case to allow the tribe to determine its own jurisdiction, hear the case, and then you have the remedy in federal court under Wilson to say, look, of course I had to exhaust because this case, but now I'm making the straight-out jurisdictional argument. We don't have to say whether it's plainly lacking or not. You have to get to the merits of the jurisdictional argument. No, Your Honor, we would disagree, because it is plainly lacking here. And because there was the attempt to exhaust. And in the cases where exhaustion was required, even though it's not generally required, it's the comity concern, where it's required, it's where there was that appellate ability to move forward and to do the interlocutory appeal, where here there was not. It was exhausted in the tribal court. They ruled on the merits of the jurisdictional issue based on Montana and Nevada. They ruled on it. The tribal court in the appellate court doesn't recognize that appeal right. So there was no other availability of any further exhaustion. But there will be an appeal after the case is over to the tribal appellate court. Your Honor, after they've imposed whatever codes of conduct and whatever common law they have in the tribes, again, look at the cases starting with Montana and throughout, and the concern is being hailed into the court with an unfamiliar form, unfamiliar codes of conduct, like the oral and written traditions that are asserted in this case. A non-consenting non-Indian cannot be forced to be in court there. And regulatory jurisdiction is different from the ability to pull someone in, adjudicate them in the tribal court, Your Honor. We've had, for example, Wilson v. Washington. It was a tort case that went to trial in tribal court. And what we said in that case, it couldn't be enforced because it was on fee land owned by others, in that case a highway. But what we said was, in that case they exhausted, and we adjudicated the question of jurisdiction later. But part of that case is, if you think that there are due process concerns with the tribal system, then that's an appropriate place to raise it, because we adopt the doctrine of comity. So I realize that you're probably concerned about some of the matters of whether you're going to get a fair trial or not, but you're not precluded from raising those in federal court later, those issues in federal court later. Right, Your Honor, that's true. At the same time, I would just point out that the case would suggest that the presumption is against tribal jurisdiction unless they have established that they have it, based on their inherent sovereignty, based on those Montana exceptions. It's not here. The court seems to be viewing it today as if, because it's not specifically dealt with on these facts in any of those cases, that they presumptively have it. It's the opposite conclusion. Well, if your theory were true, why did we require exhaustion in Ford Motor Company? In Ford Motor Company? Well, I know you didn't find jurisdiction there, Your Honor. We said it was, no, what we said was we required exhaustion in that case. And I don't believe, did they assert any of the exhaustion exceptions in that case, Your Honor? Well, it seems to me that the tribal jurisdiction was a little more tenuous in that case than it is here. Well, but here there are not one but several of the exceptions that apply. Again, we believe that it is plain that they have none. Also, again, attempted exhaustion, and the tribe just doesn't recognize that interlocutory appeal right. So we did try to exhaust, Your Honors. Any other questions? Thank you. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz. Mr. Schultz.
judges: Thomas, Graber, Larson